No. 24-2229

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DISABILITY RIGHTS OREGON, *et al.,*
*Plaintiffs-Appellees,*

v.

DAVID BADEN, *et al.*
*Defendants-Appellees*,

v.

MARION COUNTY, Putative Intervenor,
*Movant-Appellant.*

On Appeal from the United States District Court
for the District of Oregon
No. 3:02-cv-00339-MO
Hon. Adrienne Nelson, District Judge

## APPELLEES' REPLY IN SUPPORT OF THE MOTION FOR SUMMARY DISPOSITION

EMILY COOPER
THOMAS STENSON
Disability Rights Oregon
510 S.W. 10th Avenue, Suite 200
Portland, Oregon 97205
Tel: 503-243-2081
tstenson@droregon.org
*Attorneys for Plaintiffs-Appellees*
Disability Rights Oregon (formerly Oregon
Advocacy Center) & Metropolitan Public
Defender, Inc.

## REPLY TO MARION COUNTY'S OPPOSITION TO MOTION FOR SUMMARY AFFIRMATION

The County's second motion to intervene, filed 22 years into this litigation, is even more untimely than its first rejected motion to intervene. The second motion to intervene is just as doomed as the first. The County cannot excuse its delayed motion, as it fails to allege that it ever believed that either Plaintiffs or Defendants were previously representing its interests. Neither should it benefit from the "limited intervention" timeliness standard, as it never requested limited intervention before the trial court.

Even if the County were permitted to intervene, it has no viable appeal on any issue. The appeal of the March 2024 order is now moot, as the Oregon Supreme Court has now *twice* issued mandamus relief under state law, prohibiting the relief the County claims it is entitled to. The remaining orders from 2022 and 2023 are untimely appealed under Rule 4.

## I. Marion County Presents No Coherent Argument on Which the Court Could Find Its Second Motion to Intervene Timely

A trial court's denial of a motion to intervene on timeliness grounds is reviewed for an abuse of discretion. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). The trial court denied a June 2023 motion to intervene as untimely, and this Court summarily upheld that decision. *Or. Advoc. Ctr. v. Allen*, No. 23-35516, 2024 WL 2103274, at *1 (9th Cir. May 10, 2024)

(holding that trial court was "well within its discretion" in denying motion). The County offers only two paper-thin responses on the timeliness of its second motion.

### A. The District Court Did Not Err in Refusing to Apply the "Limited Purpose" Timeliness Assessment Because Marion County Never Alleged that Its Intervention Was for the Sole Purpose of Appeal

The County argues that the trial court erred by not assessing timeliness from the date of the March 2024 order, because the "limited intervention" standard should apply. Dkt. 23.1, at 8-9. In the Ninth Circuit, a "motion to intervene seeking *only* to participate in the appeal is timely if filed within the time allowed for filing an appeal." *United States v. Washington*, 86 F.3d 1499, 1505 (9th Cir. 1996) (emphasis added). That key word "only" is the stumbling block for the County. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) (limited purpose analysis does not apply where putative intervenor "did not originally request limited intervention"). While the County clearly told the district court of its intent to appeal, it *never* told the trial court that it wished to intervene for the *sole* purpose of appealing the March 2024 order.[1] The County's second motion in intervention instead identified, in addition to the intent to appeal, a purpose in its intervention to fight "particularized harms" including the costs of detention in jail, the financial

---

[1] The County's response cites only to pleadings indicating that the County sought to appeal the March 2024 order, quoting no statement renouncing an intent to intervene at the trial court level or clearly limiting the intervention *solely* to appeal.

burdens of the State's "unfunded mandate" to provide community services, and the inadequacy of treatment of those needing hospital level care. ECF 478, at 3. Those "particularized harms" had little to do with the March 2024 order, strongly implying an intent to intervene in trial court proceedings.

If the County truly intended to intervene for the sole purpose of appeal, its failure to say so clearly is the County's error, not the trial court's. *Oregon*, 913 F.2d at 588.[2] The trial court reasonably inferred that the County was seeking both to appeal and to intervene in the district court proceedings. The district court did not abuse its discretion by refusing to fill in blanks the County left in its own pleadings.

### B. The County's Invented Standards on Timeliness of Intervention, Such as Changed Circumstance or New Questions, Are Not the Law in This Circuit or Any Other

Timeliness is measured from "when the intervenor became aware that its interest would no longer be protected adequately by the parties." *Legal Aid Soc. of Alameda Co. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980). The putative intervenor "must convincingly explain its delay in filing its motion to intervene." *Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1985). The County does not

---

[2] The only clear declaration from the County that it wished to intervene *solely* for the purpose of appeal came in its opposition to this motion. Dkt. 23.1, at 16. An appellate court "will not consider arguments that are raised for the first time on appeal." *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004).

identify any basis for belief that either the State Defendants or the Plaintiffs were representing its interests prior to March 2024, recognizing instead the long-established adversity between the County and the parties.

Instead of citations to law, the County's response contains numerous invented standards justifying its late motion: a "significant change in circumstances," Dkt. 23.1, at 7, that the March 2024 trial court order "imposed many new burdens" on the County, *id.* at 16, or that the Second Motion raised new questions. *Id.* at 8. None of the County's manufactured standards are supported with a single cite to any case, nor even any logical proposition as to why such standards should apply.

This Court has repeatedly rejected such broad standards to intervene. A putative intervenor must act as soon as they know that the "end result of the protracted litigation would not be entirely to its liking." *Orange County*, 799 F.2d at 538. A new motion or court order that is merely part of the "general progression of the case" or a "foreseeable part of a chain of events" is not a basis for intervention. *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990). The outcome of the March 2024 motion was highly foreseeable, as the 2002 injunction in this case required "full admission" of incompetent defendants "to the state mental hospital." *Or. Advoc. Ctr. v. Mink*, No. CV 02–339–PA, 2002 WL 35578910, at *7 (D. Or. May 10, 2002). The trial court found that county jails

offered "constitutionally inadequate treatment" and that continued detention of such detainees in jail was harmful. *Id.* at *6.

Given the 1) explicit requirement of "full admission" to the state hospital and prohibition on protracted jail detention, 2) Plaintiffs' established opposition to the continued detention of people found unable to aid and assist, and 3) Defendants' refusal at any point to offer the "outpatient" services at issue, the County could not have believed at any point in the last 22 years that either Plaintiffs or Defendants would support the protracted detention of incompetent detainees in jails while requiring periodic "outpatient" treatment in the state psychiatric hospital. Since the County could never have reasonably believed either party would advance its interests on this point and admits long-standing adversity to both parties, the County's March 2024 second motion to intervene is untimely.

## II. Even if the County Could Timely Intervene, Its Attempt to Appeal the March 2024 Order is Moot, Since Oregon State Law Prohibits the Outcome the County Seeks

The County's substantive appeals turn exclusively on claims associated with the March 2024 order. Subsequent proceedings in state court have made those claims moot. *Lombardo v. Warner*, 481 F.3d 1135, 1137 (9th Cir. 2007). The state court order at issue was rescinded on June 13, 2024, following a peremptory writ of mandamus from the Oregon Supreme Court. The defendant has been released to

the community as a result of Oregon's state courts following Oregon state law. The March 2024 order has no further implication for the County.

The March 2024 order addressed a single state court order affecting a single defendant. Judge Audrey Broyles ordered in February 2024 that a criminal defendant should be held in the Marion County jail while being transported to the Oregon State Hospital for "outpatient" restoration services once a week. The Oregon State Hospital does not offer such "outpatient" services and never has.

Oregon law does not authorize state court judges to impose such conditions. Oregon state law permits trial courts to choose from five options in addressing the needs of defendants found unable to aid and assist their attorneys: courts may 1) commit a defendant to a psychiatric facility; 2) place a defendant in community restoration services; 3) initiate a civil commitment; 4) initiate a protective proceeding (or guardianship); or 5) release the defendant and dismiss the case. ORS 161.370(2)(c). Judge Broyles' choice—to continue to hold the defendant in jail and require once-a-week "outpatient services" at the state hospital—is not one of those five choices. No Oregon state court judge has previously imposed such a regimen, nor has one since.

Parallel proceedings took place in the Oregon Supreme Court. That court granted a writ of mandamus requiring the Marion County judge to enter an order consistent with ORS 161.370(2)(c). Two weeks later, Judge Broyles had not yet

ordered any further disposition of the matter. On June 10, 2024, the Oregon

Supreme Court issued an amended peremptory writ of mandamus to Judge

Broyles, requiring her to vacate an earlier order on dismissal "and to enter an order

that directs an action authorized by ORS 161.370(2)(c) for restoration services,

other proceedings authorized by that statute, or dismissal of the charges, by 5:00

p.m. on June 13, 2024." *See* Exh. A. (emphasis in original). On June 13, Judge

Broyles ordered the defendant released. *See* Exh. B.

In Oregon law, "[m]andamus is an extraordinary remedy, and may serve

only to enforce a known, clear legal right." *Oregon v. Burleson*, 160 P.3d 624, 627

(Or. 2007) (citations omitted). Appellees are not familiar with any instance of the

Oregon Supreme Court re-issuing a writ of peremptory mandamus to a trial court

with its instructions reiterated, specified, and underlined.

While the mandamus is brief, the order's meaning is crystal clear. The only

plausible reading of the mandamus is that the February 2024 order from the

Marion County court confining the defendant in that matter to the Marion County

jail was *not* one of actions "authorized by ORS 161.370(2)(c)." The County

proposes no other possible reading. Since that writ may "serve only to enforce a

known, clear legal right," this Court can infer that the Judge Broyles' placement of

the defendant in jail with "outpatient" restoration violated a "known, clear right."

Even should this Court reverse the district court's March 2024 order, nothing would change. The detainee has been released, and the order annulled. Any similar order in the future would plainly violate ORS 161.370(2)(c), not to mention the federal constitution and permanent injunction in this case. This Court may not assume that any Oregon judge would attempt to violate state and federal law in this manner again. *Oregon State Police Officers Ass'n v. Peterson*, 979 F.2d 776, 778 (9th Cir. 1992). Since such an order will likely never arise again (and the Oregon Supreme Court stands ready to vacate any such order), the issue is moot.

### III. The County's Effort to Appeal Injunctions from 2022 and 2023 Are Plainly Untimely

This Court lacks jurisdiction to entertain appeals of matters not appealed within the time limits of Appellate Rule 4. "A timely notice of appeal is a non-waivable jurisdictional requirement." *Stephanie-Cardona LLC v. Smith's Food & Drug Centers, Inc.*, 476 F.3d 701, 703 (9th Cir. 2007). The County does not even allege that its attempts to appeal district court orders from September 2022, May 2023, and July 2023 are timely—with notices of appeal filed nine to eighteen months after the entry of those orders.

Instead, the County hangs the jurisdiction of this Court on an analogy to a single case, *Gon v. First State Insurance*. 871 F.2d 863, 866-67 (9th Cir. 1989). The *Gon* case holds, contrary to the County's construction, that "one who has long since foregone a right to appeal an injunction ought not to regain it simply because

a separable modification, appealable in its own right, has occurred." *Id.* at 866. *Gon* does not stand for and explicitly rejects the County's premise of automatic appellate jurisdiction over months- or years-old orders merely because of a subsequent order involving a "separable modification."

In *Gon*, successive orders, taken in combination, imposed a particular burden on the insurer, and the scope of that burden was not apparent until the final order timely appealed from. *Id.* at 866-67. The *Gon* decision, to the extent that it authorizes otherwise untimely appeals, has essentially been limited to its unique facts, based on the absence of comparable case law cited by the County or discovered by Plaintiffs.

The March 2024 order does not fit the parameters of the *Gon* decision. It did not modify any prior order, nor did it resolve any "genuine ambiguity." *Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 211-12 (1952) (time for appeal does not restart, unless court "changes matters of substance or resolves a genuine ambiguity"). The order merely declares that the state court's order violated the Supremacy Clause and the already-existing terms of the July 2023 order. The March 2024 order reiterated the prior holding, without altering or amending the July 2023 Order in any way.

Even if the Supremacy Clause order was wrong, vacating the March 2024 order would suffice to address any harm (to the extent any exists) arising from the

ruling. Determination of the scope of the Supremacy Clause as applied to the March 2024 order does not require adjudicating the legally distinct claims of the County regarding the July 2023 order. *C.f. Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000), as amended (Oct. 31, 2000) ("Two issues are not 'inextricably intertwined' if we must apply different legal standards to each issue."). The County provides no argument as to why an order vacating the March 2024 order would not address whatever valid interests remain, assuming any do.

What the County seeks—and what the law does not permit—is a procedural windfall, allowing it to raise untimely appeals whose scope far exceeds the single-defendant issue addressed by the March 2024 order. *Gon*, 871 F.2d at 866 (a "separable modification" to a prior order does not reopen the opportunity to appeal the underlying order); *see also Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 263 n.7 (1978) ("underlying judgment" not reviewable even where Rule 60 order is). The County gave up its opportunity to challenge the 2022 and 2023 orders by failing to intervene to appeal those orders within 30 days.

The County now wants a second opportunity to attack a settlement agreement struck in August 2022 between State Defendants and Plaintiffs, even after the County waived its interest by inaction. The County seeks to raise a host of issues that have nothing to do with the peculiar jail-based restoration program now

annulled by the Oregon Supreme Court.). Appellate Rule 4 exists to ensure finality and to prevent such belated appeals of old matters.

Caught between conflicting desires to demonstrate timely intervention and to justify the scope of its appeal, the County seeks to prove *both* that the 2022 and 2023 orders are "inextricable from" the March 2024 order, *and* that the March 2024 order represented a "remarkable change in circumstances." Dkt. 23.1, at 4, 6. This Court should not waste further time on contradictory and frivolous arguments from the County. It should grant the motion for summary affirmation. There is no meritorious argument that the District Court abused its discretion.

Date: June 14, 2024

EMILY COOPER
THOMAS STENSON
Disability Rights Oregon
JESSE MERRITHEW
Levi Merrithew Horst

/s/  Thomas Stenson
Thomas Stenson

Attorneys for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE AND SERVICE

I am the attorney for the Plaintiffs-Appellants. This reply contains 2598 words, with 0 words manually counted in any visual images and excluding the items exempted by FRAP 32(f). I certify that this reply complies with the word limit described in FRAP 27(d)(2)(C).

I certify that this reply was prepared using 14-point Times New Roman font.

The reply will be served on Defendant-Appellees and Intervenor-Appellant through the Electronic Filing System, via their attorneys.

Date:          June 14, 2024

/s/  Thomas Stenson
Thomas Stenson

Attorney for Plaintiffs-Appellees

# <u>Appendix to Plaintiffs-Appellees' Reply in Support of Motion for Summary Disposition</u>

## Exhibit A



IN THE SUPREME COURT OF THE STATE OF OREGON

State of Oregon,
Plaintiff-Adverse Party,

v.

Charly Josh Velasquez-Sanchez,
Defendant-Relator.

Marion County Circuit Court
20CR08901, 21CR46350, 22CR35776, 23CR28431

S071004

**AMENDED PEREMPTORY WRIT OF MANDAMUS AND APPELLATE JUDGMENT**

To: Honorable Audrey J. Broyles, Judge, Marion County Circuit Court

The court has directed that an amended peremptory writ of mandamus issue.

"Wherefore, in the name of the State of Oregon, you are commanded to vacate the March 12, 2024, orders denying defendant-relator's motion to dismiss in Marion County Circuit Court Case Nos: 20CR08901, 21CR46350, 22CR35776, 23CR28431, and <u>to enter an order that directs an action authorized by ORS 161.370(2)(c) for restoration services, other proceedings authorized by that statute, or dismissal of the charges, by 5:00 p.m. on June 13, 2024</u>."

Issued: June 10, 2024

NANCY J. COZINE
State Court Administrator

By: _____
    Daniel W. Parr
    Appellate Court Administrator
    Authorized Representative of the State Court Administrator

**AMENDED PEREMPTORY WRIT OF MANDAMUS AND APPELLATE JUDGMENT**

Flynn, C. J., not participating.

**DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS**

Prevailing party: Relator.                    [ x ] No Costs Allowed.

Oregon Supreme Court:
    Appellate Judgment Effective Date: May 21, 2024

*NOTE: This is the appellate judgment of the Oregon Supreme Court and should be entered pursuant to ORS 19.450*

c:  Laura Graser
    Denise Fjordbeck
    Audrey J. Broyles
    Kirsten Naito
    Marion County Trial Court Administrator

**AMENDED PEREMPTORY WRIT OF MANDAMUS AND APPELLATE JUDGMENT**

Plaintiffs-Appellees'
Exh. A, p. 2

# <u>Appendix to Plaintiffs-Appellees' Reply in Support of Motion for Summary Disposition</u>

## Exhibit B

STATE OF OREGON
Marion County Circuit Courts
JUN 13 2024
FILED

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MARION

STATE OF OREGON

Velasquez-Sanchez, Charly Josh, Defendant

_____, AKA

SID#: 2388104

)  ORDER FOR RELEASE and
)  RELEASE AGREEMENT
)  Case # 20CR08901  Charge: Assault P.50 PV
)  Case # 21CR46350  Charge: Assault 4 PV
)  Case # 22CR35796  Charge: Dis Con 2
)  Case # 23CR28431  Charge: Assault 4 x 3, Trespass 2
)  ☐ NOTE: One or more of the above cases include
charges which constitute domestic violence.

**As a condition of release from custody, the Defendant is Ordered to:**

1. Personally appear in Court at __3:30__ a.m./(p.m) on __6 | 20 | 24__ , at the:
   ☐ Marion County Court Annex, 4000 Aumsville Hwy. S.E., Salem, Oregon
   ☐ Marion County Courthouse, 100 High Street N.E., Salem, Oregon

2. Reside at: __Direction of PRC__                    Telephone: _____

3. Submit to the orders and process of the Court.

4. Personally appear on any future dates set by the Court until discharge or final order of the Court.

5. Obey all laws, and understand that a new arrest may cause this Release Agreement to be revoked.

6. Not depart the State unless authorized by the Court.

7. **NOT HAVE DIRECT OR INDIRECT CONTACT, IN ANY MANNER, WITH ALLEGED VICTIM(S)/WITNESS(ES):**
   Andrew Limbeck, Laurie Miller, Ashley Rochette, Anastacia Sanchez De Velasquez, Josiah Velasquez Sanchez
   **unless authorized by:** ☐ **this court;** ☐ **DHS;** ☐ **juvenile court.** See back of document for definition of contact.

8. If you have an attorney on this case, contact the attorney immediately upon release and maintain contact with the attorney throughout this case.

9. Not illegally possess or consume controlled substances, and not enter places where illegal controlled substances are used, kept or sold.

10. Not drive without a valid driver license and insurance.

11. If you are on pretrial release, probation, parole or post-prison supervision, contact supervising officer upon release, and obey all conditions of my supervision.

12. Comply with conditions of pretrial release services.

☑ Custodial release to: __P.O. David Daniels at 2pm on 6|13|24__
**NOTE:** The custodian shall supervise in accordance with the conditions of this agreement, use every effort to assure defendant appears at all scheduled court appearances and notify the Court immediately of any violation(s) of the terms of this agreement.

☐ The Defendant is to report to the Pretrial Release Office at the Marion County Circuit Court Annex Information Window (4000 Aumsville Highway, Salem, OR 97317) in-person within three (3) Business Days of Release.

☑ Not possess or consume alcohol, and not enter bars or taverns.

☑ Not possess or use firearms, and obey any current orders prohibiting possession of firearms.

☐ Not possess or use firearms because you are charged with a crime involving one or more of the following:
   ☐ violence or threat of violence toward another person, including a member of your family or household;
   ☐ a firearm; ☐ a controlled substance; ☐ other: _____

☑ Other: Take medications as prescribed  No controlled substances or intoxicants  Make all appointments including forensic evaluations, court & legal skills
Do not go within .25 miles of any school or park; comply with GPS monitoring and house arrest or any location where children congregate

Dated: __6|13|24__                    _____ Judge

Audrey J. Broyles
Print, Type of Stamp Name of Judge

I also acknowledge that **if I violate any condition** in this Release Agreement, a warrant for my arrest may be issued. Any security may be forfeited. I understand that I may also be prosecuted for either **Contempt of Court** or **Failure to Appear**. I have read this Agreement, or had it read to me, and understand its terms. I swear or affirm that the above information is true, and I will comply with the terms in every respect.

Defendant's Signature: _____

SUBSCRIBED AND SWORN to before me this __13__ day of __June__ , 20 __24__ .

Court Clerk / Deputy Sheriff: _____

Type of Release: ☐ CROR  ☐ JROR  ☐ Security $_____ ☐ CAP ☐ FORCE ☐ Sup Authority ☐ PTR ☐ OJD PTR

RELEASE AGREEMENT                    Page 1 of 2                    FC(FC 9/6/23)

Plaintiffs-Appellees'
Exh. B, p. 1

_Verified Correct Copy of Original 6/13/2024._

# Definition of Prohibited Contact

## Prohibited contact with a person is defined as:

❖ Coming into the visual or physical presence of the person(s).

❖ Following the person(s).

❖ Waiting or driving by the outside of the home, property, place of work or school of the person(s) or of a member of the person(s) immediate family or household.

❖ Sending or making communication with the person(s), including in writing, by telephone, by computer, or in any other form. This includes the use of e-mail, text messaging and communication through web sites.

❖ Communicating through a third person with the person(s).

❖ Committing a crime against the person(s).

❖ Communicating with a third person who has some relationship to the person(s) with the intent of affecting the third person's relationship with the person(s).

❖ Damaging the home, property, place of work or school of the person(s).

❖ Delivering directly or through a third person any object to the home, property, place of work or school of the person(s).