**No. 24-2229**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DISABILITY RIGHTS OREGON et al.,
*Plaintiffs-Appellees*,

v.

DAVID BADEN et al.,
*Defendants-Appellees*,

v.

MARION COUNTY
*Proposed Intervenor-Appellant.*

On Appeal from the U.S. District Court for the District of Oregon
Case No. 3:02-cv-00339-AN
Honorable Adrienne Nelson

---

### APPELLANT'S EXCERPTS OF RECORD
### VOLUME 1 of 3

---

James Bopp, Jr.,  Ind. Bar No. 2838-84
Joseph D. Maughon, Va. Bar No. 87799
Taylor C. Shetina, Ind. Bar. No. 37887-45
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434

*Counsel for Marion County*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No.: 3:02-cv-00339-AN (lead) 3:21-cv-01637-AN (consolidated) |
| Plaintiffs, v. | OPINION AND ORDER |
| PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, | |
| Defendants. | |

Amicus curiae Marion County (the "County") moves, for the second time, to intervene in this case pursuant to Federal Rule of Civil Procedure 24(a) and (b). Along with its Motion to Intervene, the County filed a Motion to Expedite or Accelerate Ruling on March 29, 2024, asking this Court to rule on the Motion to Intervene by April 4, 2024. Plaintiffs oppose the motion, and defendants take no position. For the following reasons, the County's Motion to Expedite or Accelerate Ruling is GRANTED, and the County's Motion to Intervene is DENIED.

**LEGAL STANDARD**

**A.      Intervention of Right**

Federal Rule of Civil Procedure 24(a)(2) requires a court to permit intervention when four requirements are met:

> "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). The applicant seeking to intervene bears the burden of showing that all four requirements are met. *Chamness v. Bowen*, 722 F.3d

1110, 1121 (9th Cir. 2013).  In making its determination, a court is "guided primarily by practical and equitable considerations, and the requirements of intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

**B.     Permissive Intervention**

Federal Rule of Civil Procedure 24(b)(1)(B) grants courts discretion to permit intervention when an applicant makes a timely motion to intervene and "has a claim or defense that shares with the main action a common question of law or fact."  The movant bears the burden of establishing three requirements: (1) the applicant shares a common question of law or fact with the main action; (2) the applicant's motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims.  *Cooper v. Newsom*, 13 F.4th 857, 850 (9th Cir. 2021).  Even if all three requirements are met, "the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties."  *Id.*

## BACKGROUND

The factual background of this case is well set out in prior opinions and orders.  *See, e.g.*, Op. & Order of Jan. 9, 2023, ECF [338]; Op & Order of May 25, 2023, ECF [395].  As relevant to the present motion, the County has participated in this matter as amicus curiae since August 29, 2022.  Minutes of Proceedings of Aug. 29, 2022, ECF [269].  In June of 2023, the County sought to intervene in this case based on the indirect effects of the September 1, 2022 Order to Implement Neutral Expert's Recommendations (the "September 2022 Order"), ECF [271], on the County's programs and services, and the anticipated effects of a pending motion to amend the order.  First Mot. to Intervene ("1st Mot. to Intervene"), ECF [402], at 2-3.  That motion was denied at oral argument on June 29, 2023.  Minutes of Proceedings, ECF [415].  In denying the motion, U.S. District Judge Mosman stated on the record:

> "I disagree that Marion County has met the standard for either mandatory or permissive intervention, both on the merits of the rule, and particularly on timeliness. Certainly some facts have changed, but the sort of litigation posture of the parties and who is advancing, for example, Marion County's interests and who isn't, that's been a longstanding situation that hasn't dramatically changed by altered facts on the ground."

Tr. of Oral Arg. from June 29, 2023, ECF [421], at 19:23-20:5.  The County filed a Notice of Appeal on

July 27, 2023, and the appeal is currently pending before the Ninth Circuit. Notice of Appeal, ECF [424].

On July 3, 2023, Judge Mosman issued a Second Amended Order to Implement Neutral Expert's Recommendations (the "Second Amended Order"), ECF [416], which is the operative injunctive order in this case. On February 9, 2024, Marion County Circuit Court Judge Audrey Broyles ordered the Oregon State Hospital to provide outpatient restoration services to a criminal defendant. Op. & Order of Mar. 6, 2024, ECF [475], at 2. The defendant had already received the maximum duration of restoration services authorized under the Second Amended Order, but he was not restored to competency. *Id.* On March 6, 2024, Judge Mosman issued an order (the "March 2024 Order") holding that Judge Broyles' order violated the Supremacy Clause because it required the Oregon State Hospital to provide the defendant with restoration services that exceeded the Second Amended Order's maximum duration. *Id.* at 2-3.

The County now moves, for the second time, to intervene in this case, alleging that, as a result of the September 2022 Order, "the County's community restoration caseload tripled while placement options dwindled." Second Mot. to Intervene ("2d Mot. to Intervene"), ECF [], at 2. Further, it argues that the March 2024 Order "further increases the financial and administrative burdens on the County" because "[b]y prohibiting Oregon State Hospital . . . outpatient services as an alternative to community restoration, the County will be presented with even more individuals requiring services." *Id.* This, the County alleges, "further burden[s] the County's already strained resources" because it creates "an increase in the number of individuals remaining in jail," "an increased number of individuals charged with violent crimes simply leaving services without receiving stabilizing treatment," and "obvious fiscal consequences to the County from the increase in services that is caused by turning individuals away from outpatient services." *Id.* at 3.

## DISCUSSION

Although the County reiterates many arguments already made in its June 2023 motion to intervene, the denial of that motion is currently pending on appeal before the Ninth Circuit. Thus, to the extent the County is asking this Court to reconsider the decision to deny its first motion to intervene, the Court is without jurisdiction to do so. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885-86 (9th Cir. 2001) ("[J]urisdiction is transferred from a district court to a court of appeals

upon the filing of a notice of appeal.").  Accordingly, the Court considers the second motion to intervene only insomuch as the County's arguments relate to the March 2024 Order.

## A.     Timeliness of the Motion

For both permissive intervention and intervention by right, a threshold requirement is that the motion is timely.  Timeliness is assessed based on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

As an initial matter, the County asks this Court to grant its motion so that "it may appeal the March 2024 [ ] Order," but also states that the County seeks to intervene to address "particularized harms."  Whether the County is seeking limited intervention for the purpose of appeal is relevant to the timeliness inquiry because "[a] motion to intervene seeking only to participate in the appeal is timely if filed within the time allowed for filing an appeal." *United States v. State of Washington*, 86 F.3d 1499, 1505 (9th Cir. 1996).  However, the County declined to file a complaint or otherwise explain the scope of relief that it seeks to obtain through intervention, making it difficult for the Court to ascertain what rights the County is claiming through intervention.  Given the lack of clarity regarding whether the County seeks only limited intervention for the purposes of an appeal, and the fact that the County's first motion sought full intervention, the Court declines to treat the present motion as one for limited intervention and the traditional timeliness test for motions seeking full intervention applies. *Id.* at 1505-06.

### 1.     *Stage of the Proceedings*

The County's present motion to intervene was filed twenty-four years after the commencement of this case.  Final judgment was entered in this case on May 15, 2002, that judgment was affirmed by the Ninth Circuit on April 1, 2003, and this Court has retained jurisdiction solely to enforce the permanent injunction.  Generally, "postjudgment intervention is generally disfavored because it creates 'delay and prejudice to existing parties.'" *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986)).  To be sure, the unique circumstances of this case may impact that general rule; however, litigation regarding enforcement of the

injunction has been ongoing since 2019. At the very least, the County is seeking to intervene over four years after the current stage of proceedings began. This factor weighs against a finding that the motion is timely.

2.      *Prejudice to the Other Parties*

The County argues that intervention is not likely to result in prejudice to the other parties because it "shared its position beginning at the earliest possible time, as soon as its interests were impacted[.]" 2d Mot. to Intervene 8. It alleges that its concerns "have been the primary issue in this case for some time." *Id.* However, plaintiffs argue that the County intervening would result in substantial prejudice because the very purpose of the County's intervention is to revisit already decided issues. The decisions on those issues are, in the plaintiffs' views, what led to the "complex and delicately balanced" orders that are currently in place in this case.

Again, this factor weighs against a finding that the motion is timely. Like the plan devised in *United States v. State of Oregon*, the Second Amended Order resulted from substantial negotiation between the parties, certain points of the plan are still disputed, and allowing the County to intervene at this point would cause substantial prejudice by disrupting the "delicate balance the parties have achieved." 913 F.2d 576, 588-89 (9th Cir. 1990). That the County's concerns have been known to the parties does not diminish the likelihood that allowing the County to intervene threatens to unravel the meticulously mediated agreement that the parties have reached.

3.      *Reason for and Length of Delay*

The length of delay is "measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties[.]" *State of Washington*, 86 F.3d at 1503. Reiterating arguments made in its first motion to intervene, the County argues that the time between its appearance as amicus and the present motion to intervene should not be counted as a delay. *Compare* 1st Mot. to Intervene 9 ("Although its participation was initially as an *amicus* in label, the County was effectively serving the role of adverse party, meaning that there was functionally no delay in the County's efforts to adequately protect its interests.") *with* 2d Mot. to Intervene 9 ("Because the County as

*amicus* served as a functionally adverse party, there was initially no need to seek formal intervention until it became clear that the [September 2022 Order] would be amended to directly bind the County."). Because these arguments were already made in County's first motion to intervene, the Court cannot revisit them.

The County also argues that the present motion does not suffer from a delay because of the "significant change in circumstances wrought by the March 6, 2024 Mosman Order," namely, that the March 2024 Order "extended [the case] to outpatient services." 2d Mot. to Intervene 9. However, plaintiffs argue that at no point in this litigation could the County have "reasonably believed that [p]laintiffs would promote a scheme confining a detainee found unable to assist in a jail cell, while offering a once-a-week opportunity for restoration classes" or that defendants would have an "interest in voluntarily assuming the responsibility of offering restorative services on an outpatient basis." Pls.' Resp. to 2d Mot. to Intervene, ECF [480], at 7. Further, plaintiffs argue that the County's purported interest related to the March Order is directly contravened by its own arguments. That is, plaintiffs highlight that the County has routinely spoken out "against the burden of continued placement of detainees unable to aid and assist in its own jail cells," yet now posits that it "has an interest in the prolonged detention in its own jail facilities of detainees as long as they receive weekly restoration treatment." *Id.* at 8.

The Court agrees with plaintiffs. There has not been a point in this litigation where the County reasonably could have believed that either party would advocate for the use of outpatient services for defendants in custody. If the County had an interest in obtaining outpatient services for detainees, it should have known that that interest was not being protected since the first injunction was put in place. *See* Judgment, ECF [51], at 1 ("[Commitment] shall be fulfilled by providing *full admission* of such persons into a state mental hospital or other treatment facility."). Even assuming that the County, as it states in its briefing, only became aware that the parties would not adequately protect its interests "upon learning that the parties were in agreement about implementation of the August 2022 Mosman Order," this still results in an over one-and-a-half-year delay.

Finally, the Court agrees with plaintiffs that the County's reasoning for the delay is inconsistent with the County's position and arguments over the last two years. That is, the County now

argues that it has an interest in providing outpatient services to detainees in custody, thereby prolonging the length of time detainees are in the County's jails, yet it has consistently held the position that holding detainees found unable to aid and assist in County jails takes up "valuable jail resources" and "pose[s] risks of harm and liability to the County."  This contradiction cannot be reconciled and is insufficient to adequately explain the County's delay in seeking to intervene in this case.

      In sum, the Court finds that the County's motion to intervene (1) is brought twenty-one years after judgment was entered, and four years into the enforcement stage of the proceedings, (2) would result in substantial prejudice to the parties; and (3) suffers from, at best, a one-and-a-half-year delay with no justifiable reason for the delay.  Therefore, the County's motion is not timely.

**B.**     **Remaining Factors**

      Having found that the County's motion is not timely, the Court need not consider the remaining elements for permissive intervention or intervention by right.  *See State of Oregon*, 913 F.2d at 589 ("Because we affirm the district court's decision that the Makah's motion was not timely, we need not reach any of the remaining elements of the test set forth in Rule 24."); *id.* ("A finding of untimeliness defeats this [permissive intervention] motion as well.").

## CONCLUSION

      Accordingly, amicus curiae Marion County's Motion to Expedite or Accelerate Ruling, ECF [479], is GRANTED, and its Second Motion to Intervene, ECF [478], is DENIED.

IT IS SO ORDERED.

DATED this 4th day of April, 2024.

Adrienne Nelson
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

---

**DISABILITY RIGHTS OREGON et al.**,

      Plaintiffs,

v.

**DAVID BADEN et al.**,

      Defendants.

No. 3:02-cv-00339-MO (Lead Case)
No. 3:21-cv-01637-MO (Member Case)

**OPINION AND ORDER**

---

**JAROD BOWMAN et al.**,

      Plaintiffs,

v.

**DOLORES MATTEUCCI et al.**,

      Defendants.

No. 3:21-cv-01637-MO (Member Case)

---

MOSMAN, J.,

This matter comes before me on Defendants' Petition for Expedited Ruling on Supremacy Clause [ECF 460]. Amici Clackamas County, Marion County, and Washington County district attorneys filed a response [ECF 468]. Amici judges also filed a response [ECF 470]. At issue is whether, under the Second Amended Order to Implement Neutral Expert's Recommendations (the "Order") [ECF 416], Marion County Circuit Court can order the Oregon State Hospital ("OSH") to provide outpatient treatment to a criminal defendant who was discharged from OSH after inpatient restoration services failed to restore him to competency. I find that the Marion County Circuit Court's order violates the Supremacy Clause.

## FACTUAL BACKGROUND[1]

On February 9, 2024, Marion County Circuit Court Judge Audrey Broyles ordered OSH to provide outpatient restoration services to a criminal defendant. Pet. for Expedited Ruling on Sup. Cl. at 2. The criminal defendant had received six months of restoration services at OSH—the maximum duration of restoration under the Order—but was not restored to competency. *Id.* After the criminal defendant hit the six-month limit, OSH discharged him to Marion County. *Id.*

Judge Broyles determined that the criminal defendant was a public safety risk and unable to engage in community restoration. *Id.* at 3. As a result, Judge Broyles ordered OSH to provide the criminal defendant weekly outpatient restoration services. *Id.*

Defendants now move for an expedited ruling, arguing that Judge Broyles's order violates the Supremacy Clause because the Order does not allow for outpatient treatment at OSH after a criminal defendant has reached the maximum duration of restoration. *Id.* Neither the amici counties nor the amici judges dispute the merits of Defendants' argument.

## DISCUSSION

I find that Judge Broyles's order violates the Supremacy Clause. The criminal defendant in question reached the maximum duration of restoration treatment by OSH under the Order. Judge Broyles ordered OSH to continue to provide the criminal defendant with restoration services, nonetheless. The fact that these services are ordered by Judge Broyles to be provided on an outpatient basis does not change the calculation. Indeed, if every county in Oregon adopted Judge Broyles's approach, there would be no one left at OSH to provide inpatient services. Because Judge Broyles's order requires OSH to provide the criminal defendant with restoration services

---

[1] The Parties agree on the facts. The facts are taken from Defendants' Petition.

that exceed the Order's maximum duration, it violates the Order. Accordingly, Judge Broyles's order violates the Supremacy Clause.

## CONCLUSION

For the foregoing reasons, Judge Broyles's order violates the Supremacy Clause.

IT IS SO ORDERED.

DATED this __6th__ day of March, 2024.


*Michael W. Mosman*
MICHAEL W. MOSMAN
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DISABILITY RIGHTS OREGON et al.**, | No. 3:02-cv-00339-MO (Lead Case) |
|       Plaintiffs, | No. 3:21-cv-01637-MO (Member Case) |
| v. | **SECOND AMENDED ORDER TO** |
| | **IMPLEMENT NEUTRAL EXPERT'S** |
| **PATRICK ALLEN et al.**, | **RECOMMENDATIONS** |
|       Defendants, | |

| | |
|---|---|
| **JAROD BOWMAN et al.**, | No. 3:21-cv-01637-MO (Member Case) |
|       Plaintiffs, | |
| v. | |
| **DOLORES MATTEUCCI et al.**, | |
|       Defendants, | |

**MOSMAN, J.**,

THIS MATTER comes before the Court on Defendants' Unopposed Motion to Amend September 1, 2022 Order [ECF 367] and Plaintiffs' Unopposed Motion for Further Remedial Order [ECF 411]. Having reviewed the papers filed in support of these motions, the Court finds that Defendants are still not in compliance with this Court's permanent injunction in *Mink* and ORDERS the following which are necessary to move Defendants towards compliance with that injunction:

## I. Neutral Expert

The Oregon State Hospital ("OSH"), the Oregon Health Authority ("OHA"), Disability Rights Oregon ("DRO"), and Metropolitan Public Defenders shall implement the recommendations in the Court's Neutral Expert's Reports. If necessary to comply with any part of this order, Dr. Pinals may grant extensions of other deadlines in her recommendations after conferring with the parties. Any such extensions shall be documented in Defendants' monthly progress reports.

## II. Admissions

OSH shall not admit patients except as provided for by the recommendations in the Neutral Expert's Reports or as otherwise provided by this Court. Namely, Aid and Assist ("A&A") and Guilty Except Insane ("GEI") persons shall be admitted according to their place on the admissions wait list or pursuant to the expedited admissions policy attached to this order as Exhibit 1.[1] In addition, OSH:

a. may admit Psychiatric Security Review Board ("PSRB") GEI revocations and persons pursuant to ORS 426.701 (extremely dangerous persons);

b. shall not admit persons civilly committed or admit "voluntary by guardian" persons unless they meet the criteria in the expedited admissions policy attached as Exhibit 2 to this order;

c. shall not admit transfers from the Oregon Youth Authority except as provided by ORS 179.473(1)(c), OAR 309-120-0080, and OAR 416-425-0020; and

d. shall not admit transfers from the Oregon Department of Corrections unless they meet expedited admissions standards as articulated in the expedited admissions policy attached as Exhibit 1 to this order.

---

[1] The expedited admissions policies referenced in this order as Exhibits 1 and 2 can be found at: https://www.oregon.gov/oha/OSH/LEGAL/Pages/expeditedadmissions.aspx.

e. For persons found unable to aid and assist whose most serious charge is a misdemeanor, only those persons charged with a "person misdemeanor" may be committed to the custody of OSH for restoration.  For purposes of this order, a "person misdemeanor" includes those crimes listed in OAR 213-003-0001(15), violation of an Extreme Risk Protective Order entered under ORS 166.525 et seq., and violation of any of the following in proceedings to impose punitive sanctions for contempt:

(1) a Family Abuse Prevention Act Restraining Order entered under ORS 107.700 et seq.;

(2) an Elderly Persons and Persons with Disabilities Abuse Prevention Act Restraining Order under ORS 124.005 et seq.;

(3) a Sexual Abuse Restraining Order under ORS 163.760 et seq.; or

(4) an Emergency Protection Order under ORS 133.035.

## III. Maximum Times

OSH shall immediately implement the maximum time for inpatient restoration in the Neutral Expert's June 2022 report as follows:

a. For patients whose most serious charge is a misdemeanor, the maximum duration of commitment for restoration shall be the lesser of the maximum permissible sentence for the underlying offense or 90 days;

b. For patients whose most serious charge is a felony, the maximum duration of commitment for restoration shall be six (6) months, unless the felony is listed in ORS 137.700(2), in which case the maximum duration of commitment for restoration shall be one year.

3

**ER - 14**

c. For purposes of this order, restoration across multiple charges shall be consolidated and contiguous consecutive periods of restoration should be eliminated unless there are new charges incurred after an initial period of restoration has ended.

d. Before a patient reaches this maximum duration of commitment for restoration under this order and remains unfit to proceed, OSH shall notify the committing court of the patient's impending discharge 60 days before the date on which the hospital is required to discharge the patient pursuant to this order.

e.  For purposes of this order, the maximum time for inpatient restoration runs from the date of admission to OSH.

f. Defendants shall consult with the Neutral Expert regarding operational and clinical aspects of implementing these limitations on the duration of inpatient restoration.

**IV. Discharge Planning Extension**

Additional time at OSH for care coordination and discharge planning to promote and protect the health and safety of the public upon state court order for a maximum of 30 days beyond the timelines described in this order after opportunity for objection by defense will be available in limited circumstances, if, according to OSH, the individual cannot be placed immediately in an identified placement after a referral has been submitted to that placement, but reasonably expects to be placed within 30 days. The extension will be considered when OSH receives any such court order at least 5 business days prior to the expiration of the restoration time period, or within 5 business days of entry of the remedial order if less than 5 days remain until expiration of the restoration time period at the time of entry of the remedial order. Failure to coordinate discharge planning by the Community Mental Health Program ("CMHP") will not constitute justification for this extended discharge planning exception.

## V. Extending Duration of Hospital Restoration for Violent Felonies

Upon notice from OSH that a defendant is reaching the end of their restoration period (and such notice shall be provided at least 60 days prior to the end of their restoration period), a district attorney may petition for an exception to the maximum time for inpatient restoration established by this order. The petition shall be signed by the district attorney for the county and submitted within 30 days of receipt of the notice of discharge (or within 30 days of entry of the remedial order if less than 30 days remain until expiration of the restoration time period at the time of entry of the remedial order), and OSH must receive any order from the committing court prior to the expiration of the restoration time period (or within 30 days of the filing of the petition if less than 30 days remain until expiration of the restoration period at the time of entry of the remedial order). The court may grant the petition if it determines the following:

a. The defendant is charged with a "violent felony" pursuant to ORS 135.240(5),[2]

b. By clear and convincing evidence, there is a danger of physical injury or sexual victimization to the victim or a member of the public if the defendant is discharged from OSH,

c. The defendant meets the requirements of ORS 161.370(3), and

d. The court concludes that there is a substantial probability that continued commitment at OSH will lead to a determination that the defendant has gained or regained fitness to proceed within that 180 day extension. In making this determination, the court shall consider the following:

(1) clinical data of progress toward restoration,

---

[2] "Violent felony" means a felony offense in which there was an actual or threatened *serious physical injury* to the victim, or a felony sexual offense. A *serious physical injury* means a physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss of impairment of the function of any bodily organ. ORS 161.015(8).

(2) evidence that the defendant's inability to aid and assist is not due to a condition that is unlikely to result in restoration such as a significant neurocognitive disorder (e.g., dementia or traumatic brain injury), or significant neurodevelopmental disability disorders,

(3) evidence regarding the outcome of prior efforts at restoration, and

(4) any other relevant information the court wishes to consider.

If the court grants a petition, the court shall conduct a review of the status of restoration efforts at intervals no greater than every 180 days in accordance with ORS 161.371. At such reviews, the court may continue the commitment for an additional 180 days if it makes the findings outlined above. The maximum total amount of commitment time shall not exceed the time period set by ORS 161.371(5).

OSH shall track the patients who are eligible for this exception by notice from the Oregon Judicial Department and shall track those for whom such exception has been requested and those who have been found by courts to fall within this exception and shall report aggregate data at least every two weeks on their data dashboard website.

## VI. Competency Opinion Clarifications

If the defendant is under a competency restoration order, at the time of subsequent statutory forensic evaluations, the forensic evaluator shall notify the court that:

a. the defendant has present fitness to proceed;

b. there is no substantial probability that, in the foreseeable future, the defendant will gain or regain fitness to proceed and whether there is no substantial probability that, within the allowable commitment period for restoration at OSH, the defendant will gain or regain fitness to proceed; or

c. there is a substantial probability that, in the foreseeable future, the defendant will gain or regain fitness to proceed and whether there is a substantial probability that, within the allowable commitment period for restoration at OSH, the defendant will gain or regain fitness to proceed.

If the probability exists, the superintendent, director, or designee shall give the court an estimate of the time in which the defendant, with appropriate treatment, is expected to gain or regain fitness to proceed.

## VII. Supremacy Clause Disputes

If OSH identifies a conflict between this order and the committing jurisdiction's order during the pendency of this order, the parties to the criminal case and an OSH representative (and its counsel) are encouraged to participate in an expedited mediation (by video or phone, if necessary) with U.S. Magistrate Judge Stacie Beckerman, to resolve the conflict. OSH and the parties to the criminal case should meet and confer prior to the mediation in an effort to resolve any conflict between the court orders and clarify the issues subject to mediation. If any party to the criminal case refuses to participate in mediation or if mediation is unsuccessful, any *Mink/Bowman* party may petition this Court for an expedited ruling on whether the Supremacy Clause establishes that this order takes precedence over the conflicting state court order, and any responses from the parties or amici shall be filed within five business days.

## VIII. Implementation

To the extent that aspects of this remedial order require updated forms and protocols by OHA, OSH, and amici, these updates shall be made with the assistance of amici and the parties, and there shall be up to a 30-day period from the date of this order to implement any such changes to relevant forms and to notify stakeholders impacted by these changes.

**IX. Compliance**

This order shall terminate upon the Neutral Expert reporting to this Court that OSH/OHA has timely admitted A&A and GEI patients for at least three consecutive months, and that the termination of this order would not cause the Defendants to fall back out of compliance. For purposes of this order "timely admission" means within seven days of a State Court order delivered to OSH ordering that the patient be admitted.

**X. Termination**

If this order is not terminated pursuant to Section IX, this order will expire on December 31, 2023, unless renewed by the Court prior to that time.

IT IS SO ORDERED.

DATED: _____July 3, 2023_____

_____/s/ Michael W. Mosman_____

MICHAEL W. MOSMAN
Senior United States District Judge



**EXHIBIT 1**

**OREGON STATE HOSPITAL**
**Office of the Superintendent**

Kate Brown, Governor

2600 Center Street NE
Salem, OR, 97301
Voice: 503-945-2852
TTY: 800-735-2900
Fax: 503-947-2900
osh.oregon.gov

June 27, 2022

**Request for Oregon State Hospital Expedited Consultation/Admission**

**PATIENTS ON THE OSH ADMISSION LIST UNDER FORENSIC COMMITMENTS**

## Purpose of this document:

This document sets forth protocols and processes for referral for expedited consultation and possible early admission of individuals under a forensic commitment awaiting admission to Oregon State Hospital from local jails. OSH and OHA are working in partnership with stakeholders to increase timely access to OSH. To achieve equitable efficiencies and maximum timeliness for all admissions, only in very limited circumstances would an expedited admission be approved.

## Role of OSH for forensic patients:

OSH has a role in caring for individuals sent via courts who are either in need of restoration to competence to stand trial, are found Guilty Except for Insanity, or are committed under an Extremely Dangerous Persons civil commitment and are found to warrant care and treatment at OSH. These legal categories (A/A, GEI and EDP) are referred to as "forensic" as they involve criminal court processes. OSH treatment providers have substantial expertise in the treatment of people with severe and persistent mental illness and can provide helpful informal consultation by telephone regarding the management of individuals waiting for OSH admission.

## Protocol:

**Individuals eligible to request expedited clinical or systems consultation/admission:** Courts, jail personnel, the individual's assigned defense attorney(s), case prosecutor(s), or anyone who, in their professional capacity, has concerns about the mental health condition of individuals in the categories listed below.



**Individuals eligible for expedited consultation/admission:** An individual being held in custody but ordered by a Court to OSH and placed on the OSH admission list, who are forensically committed pursuant to any of the following statutes:

- ORS 161.370: order for restoration of fitness to proceed;
- ORS 161.365: order for admission for up to 30 days' observation as initiated by OSH;
- ORS 161.327: An individual found guilty except for insanity (GEI); or
- ORS 426.701: An individual judicially committed as an extremely dangerous person with mental illness.

**Qualifying Criteria for Expedited Admission:** Individuals may be considered for expedited consultation/admission if they are currently at serious risk of harm to self, related to:

- Mental health symptoms compromising the immediate health and safety of the individual; and/or
- Active suicidal intent, actions such as suicide attempts, or serious self-injury*; and/or
- Inability to meet basic needs that puts the individual's immediate health and safety at risk**

  *Serious injury includes injury requiring immediate medical attention OR averted injury which would have required immediate medical intervention if not for the intervention of jail staff. An individual who has received interventions such as limiting access to lethal means, use of suicide-resistant clothing, or other staff actions used to secure the immediate safety of the individual may still be referred for expedited consultation/ admission.*

  **Risk to health and safety related to mental illness could include not eating or drinking for a period of time that could lead to medical consequences or placing oneself at risk of victimization due to apparent mental illness*

**Disqualifying Criteria for Expedited Admission:** An individual who meets the eligibility criteria above but who has *an active medical condition that requires stabilization at a primary medical center*. Once medical stabilization has occurred, if the individual still meets criteria, a request for consultation is encouraged. Consultation is also available while the individual is being stabilized to ensure timely transport and admission.

## Process:

**Rapid Response Consultation:** a telephone consultation is encouraged when there is an immediate health and safety risk which meets the above criteria AND may require OSH admission within 24-48 hours, possibly following emergency stabilization at a primary medical center.

1. OSH response occurs within one (1) business day

2. Telephone consultation only, though OSH may contact the jail to provide additional documentation, as described below
3. **Contact the OSH Admissions Department at 503-945-9265 (phone) or OSH.Admissions@odhsoha.oregon.gov (email)**
4. If further assessment of the individual is needed before a determination can be made, OSH will work with jail personnel or, if appropriate, with OHA (who will engage community mental health providers) to conduct such an assessment.

**Expedited Consultation:** a consultation and/or referral for expedited admission is encouraged when there is a health and safety risk which meets the above criteria but is not likely to require OSH admission within 24-48 hours.

1. OSH response occurs within two (2) business days
2. If a telephone consult is preferred, contact the OSH Admissions Department as above. OSH may also contact the jail to provide additional documentation, as described below.
3. Written referrals must be sent to the OSH Admissions Department (contact information below) and include the following:
   a. a written explanation of
      o the clinical concerns that require more immediate attention; and
      o a description of interventions and supports that have already been implemented or attempted; and
   b. additional documentation provided by the jail as described below.

**Additional documentation (which may be requested from the jail by the OSH Admissions Department to supplement a consultation):**

- Medical and Psychiatric Records from the jail facility; and
- Medication administration records for the last month; and
- Logs for the duration of the inmate's current stay at the jail facility detailing restraint/seclusion, special observation, administrative segregation, or disciplinary segregation; and
- If available, the status of a court order for administration of involuntary medications

Requests for consultation/expedited admission will be reviewed by the Chief Medical Officer or designee during business hours (0800-1700) Monday through Friday. The reviewer may contact the submitting jail or referral source to arrange consult by phone or video if additional information is needed.

Within 24 hours of receiving all necessary information, the CMO or designee will communicate back to the referring party related to consultation/admission considerations.

**A request for expedited admission is not meant to replace services that are currently required within jail facilities or emergency medical care. In a life-threatening emergency, the individual should be treated at the local site and taken for emergency medical care as needed.**

**Admissions Department contact information:**
Phone: 503-945-9265
FAX: 503-945-9839
Email:  OSH.Admissions@odhsoha.oregon.gov

**Hours of operation:**
Monday through Friday
8:00 AM to 5:00 PM



**OREGON STATE HOSPITAL**
**Office of the Superintendent**

Tina Kotek, Governor



2600 Center Street NE
Salem, OR, 97301
Voice: 503-945-2852
TTY: 800-735-2900
Fax: 503-947-2900
osh.oregon.gov

May 5, 2023

### Request for Oregon State Hospital Expedited Admission

### PATIENTS ON THE OSH ADMISSION LIST UNDER CIVIL COMMITMENT OR VOLUNTARY BY GUARDIAN / HEALTH CARE REPRESENTATIVE STATUS

## Purpose of this document:

This document sets forth protocols and processes for referral for expedited admission to Oregon State Hospital (OSH) of individuals hospitalized at an acute care facility under a civil commitment or admitted voluntarily by guardian or health care representative (henceforth "civil admission" status). OSH and OHA are working in partnership with stakeholders to increase timely access to OSH.

## Overarching Principled Approach to Expedited OSH Admission of Patients under Civil Admission Status:

OSH must balance the need for OSH admission for patients under civil admission status with constitutional requirements for admission to OSH for patients under forensic commitments (pursuant to federal litigation pertaining to admission to OSH of patients under forensic commitments).

Patients meeting criteria for civil admission to OSH are placed on the OSH Civil Admission list and are scheduled for admission based on bed availability. To achieve equitable efficiencies and maximum timeliness for all admissions, only in limited circumstances would an expedited admission for a patient under civil admission status be approved.

## Protocol:

***Individuals eligible to refer a patient for civil expedited admission to OSH***: Health care personnel involved in hospital management or provision of treatment to individuals in the categories listed below.

NOTE: a referral may be initiated prior to civil commitment if there is a high likelihood that the patient will meet criteria for both civil commitment and OSH admission, and the qualifying criteria for expedited admission are met. However, a patient may not be admitted to OSH under a civil expedited admission until all eligibility criteria below are met.

***Patients eligible for civil expedited admission to OSH***: An individual being treated at an acute care hospital is eligible if that patient:

1. Is civilly committed or admitted voluntarily by guardian or health care representative; and
2. Meets criteria for admission to OSH per OAR 309-091-0015 and has been placed on the OSH Civil Admission List; and
3. Meets the qualifying criteria below for Civil Expedited Admission and has been approved for expedited admission by the OSH Chief Medical Officer or designee.*

   * Placement on the OSH Civil Admission list can be simultaneous with approval by the OSH Chief Medical Officer or designee.

***Qualifying Criteria for Civil Expedited Admission***: patients may be considered for civil expedited admission if, within the previous three weeks at the acute care hospital:

- they exhibit severe aggression directed toward other persons and/or property, or
- they are unable to meet their own basic nutritional needs such that their immediate health and safety are at risk, or
- they require biological therapies available to OSH but not to acute care hospitals; **AND**
- they remain at ongoing high risk to themselves or others due to mental illness despite adequate treatment; **and**
- acute care hospital leadership concurs with the treating clinical team that referral for expedited admission to OSH is appropriate and attests that all other avenues for treatment at the acute hospital or for discharge have been exhausted.

As evidenced by:

1. Hospital course documentation demonstrating that, due to symptoms of mental illness, at least two of the following are present:
   a. The patient has engaged in physical aggression resulting in harm or injury to others or lost time at work for an employee;
   b. The patient has engaged in substantial property destruction impacting patient care;
   c. The patient has required 1:1 security staffing to prevent harm or injury to other patients or staff for longer than 72 hours;

 d. The patient has required recent frequent or prolonged seclusion** or restraint;

 e. Two or more acute psychiatric beds have been closed to reduce the risk of the patient causing harm or injury to other patients or staff;

 f. The patient cannot be safely treated on an acute psychiatric unit with available resources.

 **OR**

2. Hospital course documentation demonstrating that, due to symptoms of mental illness, at least one of the following are present:

 a. The patient is unable to meet their own basic nutritional needs such that medical intervention has been necessary or is highly likely to become necessary in the near future.

 b. The patient requires a biological therapy (ex: court-ordered electroconvulsive therapy) that cannot be provided at the acute care hospital.

 ** Behavior management plans which require that a patient may leave their assigned room only following staff assessment are considered equivalent to seclusion. An individual who has received such interventions, which reduce incidents of aggression by limiting access to peers, may still be referred for civil expedited admission.

***Disqualifying Criteria for Expedited Admission*:** An individual who meets the criteria above but who *has an active medical condition which requires stabilization or treatment at a primary medical center*. Referral and consultation may occur while the individual is being medically stabilized.

## Process:

A referral for civil expedited admission is encouraged when a patient exhibits behavior and ongoing safety risk that meets the above criteria. Note that historical behavior, while pertinent to clinical risk assessment generally, is insufficient to justify civil expedited admission in the absence of present behavioral concerns.

The acute care hospital may refer the patient to OSH for consideration of civil expedited admission by making available **to the OSH Admissions Department** by fax, email or via electronic medical records access:

- Medical records up to the current date, including
  - current progress notes
  - documentation of any seclusion and/or restraint
  - documentation describing any current behavior management plan
  - medication administration records
- A written explanation by the unit medical director of

If you need this letter in an alternate format, please call 503-945-2870 or TTY:711 *An Equal Opportunity Employer*

3

**ER - 26**

- o the current clinical behaviors and/or concerns that may require expedited OSH admission; and
- o an explanation of what need cannot be met by the acute care hospital; and
- o a description of interventions and supports that have already been implemented or attempted (this may include a description of the physical structure of the unit or location where the individual is housed)
- Name and contact information for the attending and/or covering psychiatric practitioner
- An attestation by an administrative director at the acute care hospital of review and approval of the referral

Requests for consultation/expedited admission will be reviewed by the OSH Chief Medical Officer (CMO) or designee during business hours (0800-1700) Monday through Friday. The reviewer may contact the attending practitioner if additional information is needed.

Within 24 hours of receiving all necessary information, the CMO or designee will communicate back to the referring party related to consultation/admission considerations.

- If approved, OSH will admit the patient in a timeframe deemed appropriate to the circumstances and as soon as possible considering the expedited nature of the referral.
- If denied, the patient will maintain their current place on the OSH Civil Admission List.
  - o In addition, OSH will participate in a patient care conference in collaboration with the acute care hospital and CMHP, including subsequent meetings as required and agreed upon, with the goal of identifying modifications to the care plan to promote the safety of the patient, other patients, and staff.
  - o A patient may be referred again following a denial if additional safety considerations arise which meet the qualifying criteria.
  - o All referrals, acceptances and denials, along with the rationale for such referrals, acceptances, and denials, shall be recorded in a de-identified tracking system kept by OSH and the private hospitals and reviewed on a quarterly basis in joint meetings with the private hospitals, OSH and OHA leadership representation and any other mutually agreed upon invitees to ascertain impact on compliance with federal court orders, impact on private hospitals, and any other factors of relevance to Oregon psychiatric hospital and community behavioral health system stakeholders. These quarterly reviews and lessons learned may result in further modifications of this protocol.

**Admissions Department contact information:**
Phone: 503-945-9265
FAX: 503-945-9839
Email: OSH.Admissions@odhsoha.oregon.gov

**Hours of operation:**
Monday through Friday
8:00 AM to 5:00 PM

If you need this letter in an alternate format, please call 503-945-2870 or TTY: 711    *An Equal Opportunity Employer*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

---

| | |
|---|---|
| **DISABILITY RIGHTS OREGON et al.,** | No. 3:02-cv-00339-MO (Lead Case) |
| Plaintiffs, | No. 3:21-cv-01637-MO (Member Case) |
| v. | No. 6:22-cv-01460-MO (Member Case) |
| **PATRICK ALLEN et al.,** | **AMENDED ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS** |
| Defendants, | |
| and | |
| **LEGACY EMANUEL HOSPITAL et al.,** | |
| Intervenors. | |

---

| | |
|---|---|
| **JAROD BOWMAN et al.,** | No. 3:21-cv-01637-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| **DOLORES MATTEUCCI et al.,** | |
| Defendants, | |
| and | |
| **LEGACY EMANUEL HOSPITAL et al.,** | |
| Intervenors. | |

---

| | |
|---|---|
| **LEGACY EMANUEL HOSPITAL et al.,** | No. 6:22-cv-01460-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| **PATRICK ALLEN,** | |
| Defendant. | |

---

**ER - 29**

**MOSMAN, J.,**

THIS MATTER comes before the Court on Plaintiffs' Unopposed Motion to Implement Neutral Expert's Recommendations. Having reviewed the papers filed in support of this motion, the Court finds that Defendants are not in compliance with this Court's permanent injunction in *Mink* and ORDERS the following which are necessary to move Defendants towards compliance with that injunction:

(1)    The Oregon State Hospital, the Oregon Health Authority, Disability Rights Oregon, and Metropolitan Public Defenders shall implement the recommendations in the Court's Neutral Expert's January and June 2022 reports. If necessary to comply with paragraph three (3) of this order, Dr. Pinals may grant extensions of other deadlines in her recommendations after conferring with the parties. Any such extensions shall be documented in Defendants' monthly progress reports.

(2)    The Oregon State Hospital shall not admit patients except as provided for by the recommendations in the Neutral Expert's January and June 2022 reports or as otherwise provided by this Court. Namely, Aid and Assist ("A&A") and Guilty Except Insane ("GEI") persons shall be admitted according to their place on the admissions wait list or pursuant to the relevant expedited admissions policy.[1] In addition, the Oregon State Hospital:

a. may admit PSRB GEI revocations and persons pursuant to ORS 426.701 (extremely dangerous persons);

b. shall not admit persons civilly committed or admitted voluntary by guardian unless they meet the criteria in the expedited admissions policy attached as Exhibit 1 to this Order.

---

[1] *See* OSH Forensic Expedited Admission Policy available at
https://www.oregon.gov/oha/OSH/LEGAL/Documents/Expedited Consultation for Patients Under FORENSIC Commitments revised Jun 2022.pdf (last accessed August 5, 2022).

    c.  shall not admit transfers from the Oregon Youth Authority except as provided by ORS 179.473(1)(c), OAR 309-120-0080 and OAR 416-425-0020; and

    d.  shall not admit transfers from the Oregon Department of Corrections unless they meet expedited admissions standards as articulated in the expedited admissions policy.[2]

(3)    The Oregon State Hospital shall immediately implement the maximum time for inpatient restoration in the Neutral Expert's June 2022 report as follows:

    a.  For patients whose most serious charge is a misdemeanor, the maximum duration of commitment for restoration shall be the lesser of the maximum permissible sentence for the underlying offense or 90 days;

    b.  For patients whose most serious charge is a felony, the maximum duration of commitment for restoration shall be six (6) months, unless the felony is listed in ORS 137.700(2) in which case the maximum duration of commitment for restoration shall be one year.

    c.  For purposes of this Order, restoration across multiple charges shall be consolidated and contiguous consecutive periods of restoration should be eliminated unless there are new charges incurred after an initial period of restoration has ended.

    d.  Before a patient reaches this maximum duration of commitment for restoration under this Order and remains unfit to proceed, OSH shall notify the committing court of the patient's impending discharge 30 days before the date on which the hospital is required to discharge the patient pursuant to this Order.

---

[2] *See* OSH Forensic Expedited Admission Policy available at
https://www.oregon.gov/oha/OSH/LEGAL/Documents/Exoedited Consultation for Patients Under FORENSIC Commitments revised Jun 2022.pdf (last accessed August 5, 2022).

e. From the date of this Order, for patients who, at the time of this Order, are already past the maximum length of restoration set out herein, Defendants shall provide the 30-day notice to committing courts before discharging such patients pursuant to this Order; and

f. No later than March 15, 2023, patients currently admitted at OSH who have exceeded the length of restoration set forth in this Order shall be discharged from their restoration commitment and from the hospital.

g. Defendants shall consult with the Neutral Expert regarding operational and clinical aspects of implementing these limitations on the duration of inpatient restoration.

(4) This order shall terminate upon the Neutral Expert reporting to this Court that OSH/OHA has timely admitted A&A and GEI patients for at least three consecutive months, and that the termination of this Order would not cause the Defendants to fall back out of compliance. For purposes of this Order "timely admission" means within seven days of a State Court order delivered to OSH ordering that the patient be admitted.

(5) If this Order is not terminated pursuant to Paragraph (4), this Order will expire on September 1, 2023, unless renewed by the Court prior to that time.

IT IS SO ORDERED.

DATED: _5/10/2023_

_____
MICHAEL W. MOSMAN
Senior United States District Judge



**OREGON STATE HOSPITAL**
Office of the Superintendent

Tina Kotek, Governor



2600 Center Street NE
Salem, OR, 97301
Voice: 503-945-2852
TTY: 800-735-2900
Fax: 503-947-2900
osh.oregon.gov

May 5, 2023

## Request for Oregon State Hospital Expedited Admission

## PATIENTS ON THE OSH ADMISSION LIST UNDER CIVIL COMMITMENT OR VOLUNTARY BY GUARDIAN / HEALTH CARE REPRESENTATIVE STATUS

## Purpose of this document:

This document sets forth protocols and processes for referral for expedited admission to Oregon State Hospital (OSH) of individuals hospitalized at an acute care facility under a civil commitment or admitted voluntarily by guardian or health care representative (henceforth "civil admission" status). OSH and OHA are working in partnership with stakeholders to increase timely access to OSH.

## Overarching Principled Approach to Expedited OSH Admission of Patients under Civil Admission Status:

OSH must balance the need for OSH admission for patients under civil admission status with constitutional requirements for admission to OSH for patients under forensic commitments (pursuant to federal litigation pertaining to admission to OSH of patients under forensic commitments).

Patients meeting criteria for civil admission to OSH are placed on the OSH Civil Admission list and are scheduled for admission based on bed availability. To achieve equitable efficiencies and maximum timeliness for all admissions, only in limited circumstances would an expedited admission for a patient under civil admission status be approved.

## Protocol:

***Individuals eligible to refer a patient for civil expedited admission to OSH:*** Health care personnel involved in hospital management or provision of treatment to individuals in the categories listed below.

OREGON STATE
HOSPITAL
HOPE · SAFETY · RECOVERY

If you need this letter in an alternate format, please call 503-945-2870 or TTY:711    *An Equal Opportunity Employer*

1

**ER - 33**

NOTE: a referral may be initiated prior to civil commitment if there is a high likelihood that the patient will meet criteria for both civil commitment and OSH admission, and the qualifying criteria for expedited admission are met. However, a patient may not be admitted to OSH under a civil expedited admission until all eligibility criteria below are met.

**Patients eligible for civil expedited admission to OSH**: An individual being treated at an acute care hospital is eligible if that patient:

1. Is civilly committed or admitted voluntarily by guardian or health care representative; and
2. Meets criteria for admission to OSH per OAR 309-091-0015 and has been placed on the OSH Civil Admission List; and
3. Meets the qualifying criteria below for Civil Expedited Admission and has been approved for expedited admission by the OSH Chief Medical Officer or designee.*

   * Placement on the OSH Civil Admission list can be simultaneous with approval by the OSH Chief Medical Officer or designee.

**Qualifying Criteria for Civil Expedited Admission**: patients may be considered for civil expedited admission if, within the previous three weeks at the acute care hospital:

- they exhibit severe aggression directed toward other persons and/or property, or
- they are unable to meet their own basic nutritional needs such that their immediate health and safety are at risk, or
- they require biological therapies available to OSH but not to acute care hospitals; **AND**
- they remain at ongoing high risk to themselves or others due to mental illness despite adequate treatment; **and**
- acute care hospital leadership concurs with the treating clinical team that referral for expedited admission to OSH is appropriate and attests that all other avenues for treatment at the acute hospital or for discharge have been exhausted.

As evidenced by:

1. Hospital course documentation demonstrating that, due to symptoms of mental illness, at least two of the following are present:
   a. The patient has engaged in physical aggression resulting in harm or injury to others or lost time at work for an employee;
   b. The patient has engaged in substantial property destruction impacting patient care;
   c. The patient has required 1:1 security staffing to prevent harm or injury to other patients or staff for longer than 72 hours;

If you need this letter in an alternate format, please call 503-945-2870 or TTY:711    An Equal Opportunity Employer

**ER - 34**                    EXHIBIT 1, Page 2 of 5

d. The patient has required recent frequent or prolonged seclusion** or restraint;

e. Two or more acute psychiatric beds have been closed to reduce the risk of the patient causing harm or injury to other patients or staff;

f. The patient cannot be safely treated on an acute psychiatric unit with available resources.

**OR**

2. Hospital course documentation demonstrating that, due to symptoms of mental illness, at least one of the following are present:

a. The patient is unable to meet their own basic nutritional needs such that medical intervention has been necessary or is highly likely to become necessary in the near future.

b. The patient requires a biological therapy (ex: court-ordered electroconvulsive therapy) that cannot be provided at the acute care hospital.

** Behavior management plans which require that a patient may leave their assigned room only following staff assessment are considered equivalent to seclusion. An individual who has received such interventions, which reduce incidents of aggression by limiting access to peers, may still be referred for civil expedited admission.

***Disqualifying Criteria for Expedited Admission***: An individual who meets the criteria above but who *has an active medical condition which requires stabilization or treatment at a primary medical center*. Referral and consultation may occur while the individual is being medically stabilized.

## Process:

A referral for civil expedited admission is encouraged when a patient exhibits behavior and ongoing safety risk that meets the above criteria. Note that historical behavior, while pertinent to clinical risk assessment generally, is insufficient to justify civil expedited admission in the absence of present behavioral concerns.

The acute care hospital may refer the patient to OSH for consideration of civil expedited admission by making available **to the OSH Admissions Department** by fax, email or via electronic medical records access:

- Medical records up to the current date, including
  o current progress notes
  o documentation of any seclusion and/or restraint
  o documentation describing any current behavior management plan
  o medication administration records
- A written explanation by the unit medical director of

If you need this letter in an alternate format, please call 503-945-2870 or TTY:711    An Equal Opportunity Employer

3

**ER - 35**                    EXHIBIT 1, Page 3 of 5

- the current clinical behaviors and/or concerns that may require expedited OSH admission; and
- an explanation of what need cannot be met by the acute care hospital; and
- a description of interventions and supports that have already been implemented or attempted (this may include a description of the physical structure of the unit or location where the individual is housed)

- Name and contact information for the attending and/or covering psychiatric practitioner
- An attestation by an administrative director at the acute care hospital of review and approval of the referral

Requests for consultation/expedited admission will be reviewed by the OSH Chief Medical Officer (CMO) or designee during business hours (0800-1700) Monday through Friday. The reviewer may contact the attending practitioner if additional information is needed.

Within 24 hours of receiving all necessary information, the CMO or designee will communicate back to the referring party related to consultation/admission considerations.

- If approved, OSH will admit the patient in a timeframe deemed appropriate to the circumstances and as soon as possible considering the expedited nature of the referral.
- If denied, the patient will maintain their current place on the OSH Civil Admission List.
  - In addition, OSH will participate in a patient care conference in collaboration with the acute care hospital and CMHP, including subsequent meetings as required and agreed upon, with the goal of identifying modifications to the care plan to promote the safety of the patient, other patients, and staff.
  - A patient may be referred again following a denial if additional safety considerations arise which meet the qualifying criteria.
  - All referrals, acceptances and denials, along with the rationale for such referrals, acceptances, and denials, shall be recorded in a de-identified tracking system kept by OSH and the private hospitals and reviewed on a quarterly basis in joint meetings with the private hospitals, OSH and OHA leadership representation and any other mutually agreed upon invitees to ascertain impact on compliance with federal court orders, impact on private hospitals, and any other factors of relevance to Oregon psychiatric hospital and community behavioral health system stakeholders. These quarterly reviews and lessons learned may result in further modifications of this protocol.

If you need this letter in an alternate format, please call 503-945-2870 or TTY:711     An Equal Opportunity Employer

**ER - 36**

**Admissions Department contact information:**
Phone: 503-945-9265
FAX: 503-945-9839
Email: OSH.Admissions@odhsoha.oregon.gov

**Hours of operation:**
Monday through Friday
8:00 AM to 5:00 PM

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

**DISABILITY RIGHTS OREGON,**
**METROPOLITAN PUBLIC DEFENDER**
**SERVICES, INC.,** & **A.J. MADISON,**
Plaintiffs,
v.
**PATRICK ALLEN,** in his official capacity as
head of the Oregon Health Authority,
**DOLORES MATTEUCCI,** in her official
capacity as Superintendent of the Oregon State
Hospital,
Defendants.

Case No.  3:02-cv-00339-MO (Lead Case)
Case No.  3:21-cv-01637-MO (Member Case)


ORDER TO IMPLEMENT NEUTRAL
EXPERT'S RECOMMENDATIONS

**JAROD BOWMAN, JOSHAWN DOUGLAS-**
**SIMPSON,**

       Plaintiffs,


     v.

**DOLORES MATTEUCCI,** Superintendent of
the Oregon State Hospital, in her individual and
official capacity, **PATRICK ALLEN,** Director
of the Oregon Health Authority, in his individual
and official capacity,


      Defendants.

Case No.  3:21-cv-01637-MO (Member Case)

THIS MATTER comes before the Court on Plaintiffs' Unopposed Motion to Implement

Neutral Expert's Recommendations.  Having reviewed the papers filed in support of this motion,

the Court finds that Defendants are not in compliance with this Court's permanent injunction in

*Mink* and ORDERS the following which are necessary to move Defendants towards compliance
with that injunction:

(1)     The Oregon State Hospital, the Oregon Health Authority, Disability Rights
        Oregon, and Metropolitan Public Defenders shall implement the
        recommendations in the Court's Neutral Expert's January and June 2022 reports.
        If necessary to comply with paragraph three (3) of this order, Dr. Pinals may grant
        extensions of other deadlines in her recommendations after conferring with the
        parties.  Any such extensions shall be documented in Defendants' monthly
        progress reports.

(2)     The Oregon State Hospital shall not admit patients except as provided for by the
        recommendations in the Neutral Expert's January and June 2022 reports or as
        otherwise provided by this Court.  Namely, Aid and Assist ("A&A") and Guilty
        Except Insane ("GEI") persons shall be admitted according to their place on the
        admissions wait list or pursuant to the relevant expedited admissions policy.[1] In
        addition, the Oregon State Hospital:

        a.   may admit PSRB GEI revocations and persons pursuant to ORS 426.701
             (extremely dangerous persons);

        b.   shall not admit persons civilly committed unless they meet the criteria in the
             civil admission expedited admissions policy;[2]

        c.   shall not admit transfers from the Oregon Youth Authority except as provided

---

[1] *See* OSH Forensic Expedited Admission Policy available at
https://www.oregon.gov/oha/OSH/LEGAL/Documents/Expedited_Consultation_for_Patients_Under_FORENSIC_Commitments_revised_Jun_2022.pdf (last accessed August 5, 2022).
[2] *See* OSH Civil Expedited Admission Policy available at
https://www.oregon.gov/oha/OSH/LEGAL/Documents/Expedited_Admission_for_Patients_Under_CIVIL_Commitments.pdf (last accessed August 5, 2022).

Order to Implement Neutral Expert's Recommendations
Page 2

by ORS 179.473(1)(c), OAR 309-120-0080 and OAR 416-425-0020; and

d.  shall not admit transfers from the Oregon Department of Corrections unless
they meet expedited admissions standards as articulated in the expedited
admissions policy.[3]

(3)   The Oregon State Hospital shall immediately implement the maximum time for
inpatient restoration in the Neutral Expert's June 2022 report as follows:

a.  For patients whose most serious charge is a misdemeanor, the maximum
duration of commitment for restoration shall be the lesser of the maximum
permissible sentence for the underlying offense or 90 days;

b.  For patients whose most serious charge is a felony, the maximum duration of
commitment for restoration shall be six (6) months, unless the felony is listed
in ORS 137.700(2) in which case the maximum duration of commitment for
restoration shall be one year.

c.  For purposes of this Order, restoration across multiple charges shall be
consolidated and contiguous consecutive periods of restoration should be
eliminated unless there are new charges incurred after an initial period of
restoration has ended.

d.  Before a patient reaches this maximum duration of commitment for
restoration under this Order and remains unfit to proceed, OSH shall notify
the committing court of the patient's impending discharge 30 days before the
date on which the hospital is required to discharge the patient pursuant to this
Order.

e.  From the date of this Order, for patients who, at the time of this Order, are
already past the maximum length of restoration set out herein, Defendants

---

[3] *See* OSH Forensic Expedited Admission Policy available at
https://www.oregon.gov/oha/OSH/LEGAL/Documents/Expedited_Consultation_for_Patients_Under_FORENSIC_
Commitments_revised_Jun_2022.pdf (last accessed August 5, 2022).

Order to Implement Neutral Expert's Recommendations
Page 3

shall provide the 30-day notice to committing courts before discharging such patients pursuant to this Order; and

f.   No later than March 15, 2023, patients currently admitted at OSH who have exceeded the length of restoration set forth in this Order shall be discharged from their restoration commitment and from the hospital.

g.   Defendants shall consult with the Neutral Expert regarding operational and clinical aspects of implementing these limitations on the duration of inpatient restoration.

(4)   This Order shall terminate upon the Neutral Expert reporting to this Court that OSH/OHA has timely admitted A&A and GEI patients for at least three consecutive months, and that the termination of this Order would not cause the Defendants to fall back out of compliance.  For purposes of this Order "timely admission" means within seven days of a State Court order delivered to OSH ordering that the patient be admitted.

(5)   If this Order is not terminated pursuant to Paragraph (4), this Order will expire on September 1, 2023, unless renewed by the Court prior to that time.

DATED this ___1st___ day of ___September___, 2022, in Portland, Oregon.

_____
Hon. Michael W. Mosman
Senior United States District Judge

Order to Implement Neutral Expert's Recommendations
Page 4